UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| PATTY J. L.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:22-cv-00116-TWP-KMB |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff Patty J. L. ("Patty L.") requests judicial review of the final decision of the Acting Commissioner of the Social Security Administration (the "Commissioner"), denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). For the following reasons, the Court **affirms** the decision of the Commissioner.

### I.   BACKGROUND

**A.   Procedural History**

On June 11, 2020, Patty L. protectively filed her application for SSI, alleging a disability onset date of January 1, 2000, which she later amended at the administrative hearing to be June 11, 2020. Patty L.'s application was initially denied on January 27, 2021, and again on reconsideration on June 30, 2021. Patty L. filed a written request for a hearing on July 9, 2021. On October 14, 2021, a telephonic hearing was held before Administrative Law Judge Renita K. Bivins (the "ALJ"). Patty L. was present and represented by counsel Michel Starkey. Lanell Hall,

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

an impartial vocational expert (the "VE"), also appeared and testified at the hearing. On December 9, 2021, the ALJ issued a written decision denying Patty L.'s application for SSI. On July 7, 2022, the Appeals Council denied Patty L.'s request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.

Following the decision, on September 9, 2022, Patty L. filed this action for judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). On January 4, 2023, Patty L. filed a brief in support of the request for review. On March 1, 2023, the Commissioner filed a memorandum in support of the Commissioner's decision. On March 29, 2023, Patty L. filed a reply brief in support of the request for judicial review.

**B.     Factual Background**

The Court notes that this factual background is not intended to be a comprehensive recitation of the medical history or the daily activities of Patty L. At the time of her alleged disability onset date, Patty L. was fifty-five years old, and she was fifty-six years old at the time of the ALJ's decision. Patty L. is now fifty-eight years old. Patty L. received a high school education, having obtained her GED in 1985 or 1986, and she has no past relevant employment history. She reads for leisure and uses a laptop to shop, research information, watch shows on Netflix, and participate in social media. She drives one to three times a week for a few hours to make doctor appointments and see family in the hospital. Patty L. testified that she has no problems getting along with family, friends, neighbors, or others. She can cook simple meals, load the dishwasher, and put clothes in the washer.

Patty L. further testified that she has cut back from smoking one and a half packs of cigarettes each day to half a pack a day. She takes Wellbutrin to help her with smoking cessation. She testified that she cannot do much exercise without becoming short of breath, and she can stand

only fifteen minutes before she needs to sit down because of pain. She has attempted to treat her back pain with her primary care provider, and her back pain averages six out of ten and is helped by Aleve and rest. Patty L. testified that she has some difficulty with standing in the shower and with getting dressed. Patty L. also testified that she does not have problems with her memory, but sometimes she has difficulty maintaining attention on a task.

The earliest medical record in Patty L.'s administrative record is from a primary care visit in February 2018, which notes that she had chronic obstructive pulmonary disease ("COPD") and further notes her daily tobacco use (Filing No. 8-7 at 5). She visited her primary care provider because of a cough and earache. The medical record also notes Patty L.'s history of anxiety and depression. *Id.* The medical record indicates that Patty L. had fairly consistent follow-up appointments with her primary care provider from July 2018 through August 2019. Patty L.'s body mass index ranged between 31.55 in February 2018 and 37.79 in July 2021. The doctor appointment notes mention Patty L.'s ongoing COPD, tobacco use, anxiety, depression, and gastroesophageal reflux disease ("GERD"). It was noted throughout these records that these conditions generally remained consistent without improvement or decline. The records indicate that Patty L.'s physical examinations resulted in normal respiratory findings. Some appointment notes mentioned bronchitis and its treatment as well as increased stress because of family circumstances. One office visit record also noted Patty L.'s complaint of left knee pain that lasted for two weeks. Examinations showed left knee lateral joint line tenderness with a diagnosis of internal derangement of the left knee. *Id.* at 6, 53–82, 147.

The treatment note from Patty L.'s January 2020 primary care visit indicates that she was being seen for a follow up for COPD, anxiety, and GERD. Her physical respiratory examination was normal, and it was noted that her conditions were generally staying the same from visit to

visit. The record again indicated stress from family circumstances. The record also noted that Patty L. had an upper respiratory infection that was being treated with an antibiotic (Filing No. 8-7 at 49–51).

In July 2020, Patty L. visited her primary care provider for a "chronic follow up" for COPD, tobacco use, anxiety, stress, depression, and GERD. Similar to her other primary care visits, the physical examination found her lungs clear to auscultation, respirations non-labored, equal breath sounds, and no wheezes, rales, rubs, or rhonchi. Patty L. reported high stress because of family issues, and she felt her anxiety medication was no longer effective. She was prescribed a new medication to help with anxiety. *Id.* at 36–39.

In September 2020, Patty L. told her primary care provider that her anxiety and depression were improving with medication. She also reported edema in her leg. Patty L. complained that she felt she had bronchitis, so she was prescribed an antibiotic to treat it. *Id.* at 25–30. Later in September 2020 at a subsequent follow-up appointment, Patty L. returned to her primary care provider to address her anxiety and edema. She reported improvement with medication for her anxiety and depression. She also reported that her edema was okay and asked if she could take the medication for edema only when needed rather than daily. Patty L. further reported that she finished her antibiotic for bronchitis and was feeling better. She noted that she was having lower back pain and could not stand very long. A physical examination revealed normal respiratory findings and no edema in her lower extremities. Chest x-rays in September 2020 showed mild pulmonary hyperaeration suggestive of COPD. *Id.* at 90–95.

In May 2021, Patty L. visited her primary care provider to discuss a new problem of migraine headaches. She reported suffering from headaches every three days with each headache lasting twelve hours. She reported nausea and sensitivity to light. A CT scan of Patty L.'s head

was performed, and it showed no acute intracranial abnormalities. The medical record indicated no back pain at this office visit. (Filing No. 8-7 at 131–32, 165–68.)

In June 2021, Patty L. went to the hospital because she was experiencing pain in her left ribs and her left scapular after she had coughed "very hard" a few days earlier. *Id*. at 112. It was noted that she was not having headaches or back pain. Her physical examination indicated that her lungs were clear, she had normal breath sounds, and she displayed no respiratory distress; however, there was reproducible pain to palpation over the left chest. A CT scan of Patty L.'s chest revealed a moderately large left pleural effusion and multiple rib fractures, most of which appeared to be healed. Patty L. had sclerotic densities in multiple thoracic vertebral bodies, making metastatic osseous disease a possibility. There also was a probable bone island in a vertebral body as well as atherosclerosis. While at the hospital, Patty L. was given oxygen, and the emergency room physician wanted to admit her to the hospital for additional oxygen, but she left against the physician's medical advice. *Id.* at 112–13, 130.

At a follow-up appointment in July 2021 with her primary care provider after her hospital visit, Patty L. reported that her breathing had improved, and she declined to see a pulmonologist. She was concerned about her health and who would care for her daughter if something happened to her. It was noted that Patty L.'s rib fracture was asymptomatic, and she was scheduled for an appointment with a cardiologist the following month. *Id.* at 146–48.

During the disability application process, J. Sands, M.D., and J.V. Corcoran (state agency medical consultants) reviewed Patty L.'s file and found insufficient evidence to evaluate any disabling impairments. Similarly, William Shipley, Ph.D., and Joelle Larsen, Ph.D. (state agency psychological consultants) reviewed Patty L.'s file and found insufficient evidence to evaluate the paragraph B criteria for mental health or assess any psychological limitations.

5

## II.     DISABILITY AND STANDARD OF REVIEW

Under the Act, a claimant may be entitled to SSI only after she establishes that she is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience.  42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled.  At step one, if the claimant is engaged in substantial gainful activity, she is not disabled despite her medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that meets the durational requirement, she is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled.  20 C.F.R. § 416.920(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then her residual functional capacity will be assessed and used for the fourth and fifth steps.  Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th

Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p).  At step four, if the claimant can perform her past relevant work, she is not disabled.  20 C.F.R. § 416.920(a)(4)(iv).  At the fifth and final step, it must be determined whether the claimant can perform any other work in the relevant economy, given her RFC and considering her age, education, and past work experience.  20 C.F.R. § 404.1520(a)(4)(v).  The claimant is not disabled if she can perform any other work in the relevant economy.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process.  42 U.S.C. § 423(d)(2)(B).  The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step.  *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Section 405(g) of the Act gives the Court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred.  *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ.  *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008).  While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome."  *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993).  However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).  The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability.  *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III.    THE ALJ'S DECISION

In her written decision, the ALJ conducted and explained the five-step sequential evaluation process.  At step one, the ALJ found that Patty L. had not engaged in substantial gainful activity since the alleged onset date of June 11, 2020.  At step two, the ALJ found Patty L. had the following severe impairments: disorder of the lumbar spine, COPD, tobacco abuse, obesity, depressive, bipolar and related disorder, and anxiety and obsessive-compulsive disorder.  The ALJ also found that Patty L. had other non-severe impairments.  Since Patty L. had severe impairments or combination of impairments, the ALJ proceeded to the third step. At step three, the ALJ concluded that Patty L. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

In determining Patty L.'s RFC, the ALJ explained,

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except she is able to lift and carry up to 50 pounds occasionally and 25 pounds frequently. She is able to stand and/or walk six hours per eight-hour day and sit six hours per eight-hour day with normal breaks. She can never climb ladders, ropes, or scaffolds. She can frequently stoop, kneel, crouch, or crawl. She must avoid concentrated exposure to humidity, extreme heat and fumes, odor, dust, gases, and poorly ventilated areas. The claimant can maintain concentration and attention and sustain persistence and pace for two-hour intervals

in an eight-hour workday to complete tasks that do not require fast pace or strict production quotas such as assembly lines.

([Filing No. 8-2 at 21](Filing No. 8-2 at 21).)

At step four, the ALJ determined that Patty L. did not have any past relevant work; therefore, the ALJ proceeded to step five of the sequential evaluation process. At step five, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Patty L. could perform considering her age, education, work experience, and RFC. These jobs included bagger and dining room attendant. Having determined that Patty L. could perform work in other jobs in the economy, the ALJ determined that Patty L. was not disabled. Therefore, the ALJ denied Patty L.'s application for SSI because she was found to be not disabled.

## IV. DISCUSSION

In her request for judicial review, Patty L. argues that the ALJ erred by (1) impermissibly basing the written decision on the ALJ's lay interpretation of raw medical evidence; (2) failing to explain how the evidence supports the RFC restrictions of maintaining concentration, attention, persistence, and pace for two hour intervals and completing tasks that do not require fast pace or strict production quotas; (3) failing to address time off task, absences, and stress tolerance; and (4) finding Patty L. less limited than alleged based on a wholly unsupported analysis of the evidence. Patty L. asserts that the ALJ failed to build an accurate and logical bridge between the evidence and her conclusions thereby failing to support the decision with substantial evidence. Furthermore, she argues, the ALJ committed an error of law by failing to explain how evidence of normal findings outweighed evidence that undermined the ALJ's conclusions.

First, Patty L. argues that during the disability application process, the state agency medical consultants concluded that there was not enough evidence to assess Patty L.'s claims, and no other medical source issued an opinion regarding her functional limitations. As a result, the entire

9

decision was based on the ALJ's lay interpretation of raw medical evidence. The ALJ "played doctor" in interpreting raw medical evidence, which is erroneous and warrants remand for further consideration. In her RFC discussion, the ALJ summarized medical evidence that included medical imaging and then concluded the evidence was outweighed by normal respiratory examinations and improvement and management with medication. The ALJ acknowledged Patty L.'s obesity but concluded the record did not document problems secondary to her obesity, and the ALJ failed to explain how the RFC accommodated her obesity. The ALJ ignored her left knee pain and edema, which should have been considered in combination with obesity and respiratory issues. The ALJ failed to explain how the summarized evidence supported her RFC restrictions. Patty L. argues that no medical source reviewed the more recent medical imaging evidence, and after the ALJ impermissibly "played doctor," she determined Patty L. could perform medium work with some postural and environmental limitations. However, no evidence supports such work capabilities, especially in light of Patty L.'s hearing testimony regarding her limitations.

Next, Patty L. argues that the ALJ erroneously failed to explain how the evidence supports the RFC restrictions of maintaining concentration, attention, persistence, and pace for two hour intervals and completing tasks that do not require fast pace or strict production quotas. Patty L. asserts the ALJ did not connect the summarized evidence to the RFC restrictions. The ALJ acknowledged Patty L.'s difficulty in maintaining attention on tasks, and Patty L. testified that she has difficulty with sleep, fatigue, confusion, and headaches. Her pain level influences her ability to perform daily activities. And no medical source opined on Patty L.'s mental impairments, so there is no medical source regarding her ability to concentrate, persist, and maintain pace. The ALJ simply failed to connect her RFC conclusions to any evidence regarding concentration, persistence, and pace and regarding production rate pace work. Furthermore, the ALJ erred in

concluding Patty L. could perform work as a bagger or dining room attendant because they have a temperament factor of performing repetitive or short-cycle work, yet the ALJ determined she could not perform production rate work.

Next, Patty L. argues the ALJ erred in failing to address time off task, absences, and stress tolerance. The ALJ acknowledged Patty L.'s difficulty in maintaining attention on tasks and her reports of fatigue and confusion. The ALJ assessed a moderate limitation in Patty L.'s ability to concentrate, persist, or maintain pace. The VE testified during the hearing that work would be precluded if the individual were off task more than ten percent of the workday. However, Patty L. argues the ALJ failed to address whether she can meet those benchmarks given her limitations. And Patty L.'s stress impacts her physical impairments such as headaches and her ongoing smoking despite having COPD. Yet, the ALJ did not assess any stress related restrictions.

Finally, Patty L. asserts the ALJ erroneously assessed her statements when finding her less limited than alleged based on a wholly unsupported analysis of the evidence. Patty L. argues the ALJ's credibility determination and subjective symptom analysis was patently wrong because none of the ALJ's reasons for rejecting her statements are supported. Patty L. argues the ALJ found her less limited because her symptoms were not consistent with the objective medical evidence, she reported improvement in some symptoms, and she did not seek more treatment for some symptoms. However, Patty L. asserts, the ALJ impermissibly "played doctor," so this first basis is unfounded. And some improvement after treatment does not necessarily undermine the severity of ongoing symptoms or mean there is a capacity to perform full time work. Additionally, the ALJ did not explore or explain why Patty L. did not seek more treatment for some symptoms, so this was not a proper basis to negatively impact her credibility finding. Patty L. argues remand is appropriate to fully assess her credibility determination.

In response, the Commissioner argues that "the ALJ was more than generous in finding that Plaintiff could perform a restrictive range of medium work" in light of the minimal medical record in this case (Filing No. 12 at 1). The Commissioner points out that the medical evidence was only 165 pages and consisted of normal examinations and Patty L.'s conservative treatment for COPD, depression, and anxiety with reported improvement in symptoms with medication. The Commissioner continues,

> Relying on overstatements of the minimal record medical evidence, Plaintiff complains that in assessing her RFC, the ALJ impermissibly interpreted what she labels as "raw" medical evidence. However, the ALJ simply considered the findings of doctors who interpreted imaging, as well as consistently normal physical and mental status exams. Plaintiff faults the ALJ for arriving at an RFC finding without reliance on a medical opinion. However, a claimant's RFC is a finding reserved to the Commissioner alone, and here, the ALJ cited substantial medical evidence that required no interpretation of "raw" medical evidence. In addition, the fact that state-agency medical and psychological consultants found insufficient medical evidence to determine whether Plaintiff had any functional physical or mental limitations was due to Plaintiff's own failure to produce required forms – a finding nowhere mentioned in Plaintiff's brief.

*Id.* at 1–2.

The Commissioner notes that Patty L. had the burden of production for steps one through four of the disability evaluation process. The Commissioner contends Patty L. failed to meet that burden, and her argument before this Court loses sight of that standard. Importantly, Patty L.'s argument simply is a disagreement with the ALJ's fact finding, and she invites the Court to reweigh the evidence, which is not appropriate.

The Commissioner argues that the physical examinations, imaging, and a conservative course of treatment constituted substantial evidence and provided substantial support for the ALJ's RFC assessment that Patty L. could perform a restricted rage of medium exertional work. In her appeal, Patty L. has not met her burden of showing otherwise. Patty L.'s physical examinations resulted in largely entirely normal findings. Normal imaging was throughout the medical record.

Improvement with medication was throughout the medical record. This evidence supported the ALJ's conclusions.

The Commissioner contends the ALJ's written decision shows consideration of the medical and non-medical evidence, and there was discussion of Patty L.'s symptoms and the medical source opinions. The ALJ discussed how she considered the medical evidence and Patty L.'s symptoms and activities, and she explained how this led to the RFC determination. The Commissioner asserts that Patty L.'s argument about the ALJ playing doctor and interpreting raw medical evidence is unavailing. The RFC determination is to be made by the ALJ, not by treating or examining physicians. The Commissioner argues Patty L. failed to identify any raw medical evidence the ALJ should not have considered or that should have been reviewed first by a medical expert. The ALJ considered medical imaging that record medical providers reviewed and interpreted. The ALJ also considered medical findings such as normal examinations and positive responses to medication that the medical providers listed. The ALJ did not have to "play doctor" and weigh significant positive findings against significant negative findings because the medical record was full of normal findings.

Furthermore, the Commissioner asserts,

> Plaintiff simply lists medical evidence while not stating its significance to her burden of production and while omitting certain qualifiers (Br. at 6-7). For example, Plaintiff refers to imaging showing mild pulmonary hyperaeration suggesting COPD, but a medical provider interpreted the imaging and determined that it showed mild results that simply suggested COPD (Dkt. 8-7 at p.29-30, R. 246-47). The ALJ did not look at the imaging and make her own lay conclusions; she discussed the conclusions of a medical professional. And Plaintiff does not explain how imaging showing *mild* results that indicate only a *diagnosis* of COPD satisfied her burden of production. Similarly, Plaintiff cites June 2021 imaging that she asserts showed "multiple bilateral rib fractures" (Br. at 6-7). But that is not what the record medical providers concluded. Rather, they determined that the imaging showed multiple *healed* rib fractures, with the possible exception of one rib that Ms. Baumer specifically noted was *asymptomatic* (Dkt. 8-7 at p.113, 119-20, 147, R. 330, 336-37, 364). Plaintiff cites to this same imaging and notes that it showed

13

> a bone island, but medical providers stated that it showed a "*probable* bone island" and a bone island is a benign lesion "that rarely causes symptoms. . . ." Finally, Plaintiff cites to this same June 2021 CT scan of Plaintiff's chest and notes that it showed "sclerotic densities in multiple thoracic vertebral bodies indicating the possibility of metastatic osseous disease [possible spreading bone cancer]." But medical providers indicated that this possibility "could not be excluded" (Dkt. 8-7 at p.113, 130, R. 330, 347). There is no further medical evidence on this point because, as the ALJ noted, Plaintiff left the hospital against medical advice and her breathing subsequently improved with a ten-day course of antibiotics. Medical providers did not order any further imaging. Plaintiff focuses on the results of a single CT scan of her chest, omits the qualifiers medical professionals plainly noted, and does not explain how the ALJ erred in the context of this single image.

(Filing No. 12 at 14–15 (emphases in original).)

As to Patty L.'s argument that the ALJ failed to consider her obesity in combination with her other impairments, the Commissioner contends Patty L. speaks in generalities and does not show that the ALJ in this case failed to consider her obesity in combination with her other impairments. She also failed to explain what additional restrictions would have been necessary to account for her obesity. Patty L. simply listed obesity with other impairments—back pain, knee pain, and edema—but she failed to explain the full record, which indicates only a single historical reference to back pain, knee pain, and edema, all of which resolved or were not complained of more than once. And the ALJ fully accounted for those single complaints of back pain, knee pain, and edema. Further, claimants must do more to establish a disabling impairment than simply point to a diagnosis; the Commissioner asserts that this is all Patty L. has done.

Regarding the mental RFC finding, the Commissioner argues that the ALJ sufficiently explained and supported her conclusions. The ALJ considered the limited medical evidence pertaining to Patty L.'s mental impairments, which consisted of medication management with her primary care provider and included consistently normal mental status examinations, reports of improvement with medication adjustment, and subjective reports of situational stressors because of family. Patty L. argued that the ALJ ignored certain select evidence, but she only points to her

14

own subjective statements, consisting of mostly her testimony, and ALJs are not obligated to credit a claimant's testimony. In this case, the ALJ sufficiently articulated why she found Patty L. was limited but not disabled as to her mental abilities.

As to Patty L.'s argument about the temperament factor for performing repetitive or short-cycle work and the assessed limitations precluding fast paced work or strict production demands, the Commissioner points out that the temperament factor involves a few routine and uninvolved tasks over and over again according to set procedures, sequence, or pace with little opportunity for diversion or interruption. This description is disjunctive, and the disjunctive "or" signifies that a job may or may not have pace requirements. It may simply involve routine, repetitive, uninvolved tasks, and Patty L. failed to establish that she would be unable to perform such tasks. In this case, the ALJ was entitled to rely on the VE's expertise when she testified that specific jobs met the RFC criteria, and the VE's testimony provided substantial evidence to support the conclusion about job availability.

The Commissioner also contends that Patty L.'s argument that the ALJ did not address the amount of time that she would be off task is unavailing. The burden was on Patty L. to provide evidence that she would have such limitations, and she did not meet the burden at the administrative level or here before the Court. Patty L. does not point to any medical evidence to show that she would be off task greater than ten percent of the workday. Patty L. had the statutory and regulatory burden to point to evidence proving greater limitations than the ALJ assessed, and she failed to do so. She relies on only her own subjective statements about being off task, and the ALJ supported the RFC finding with evidence of entirely normal mental status examinations. The Commissioner asserts that the same is true regarding Patty L.'s stress.

Finally, the Commissioner responds that the ALJ adequately and reasonably explained and supported the subjective symptom analysis. The ALJ considered both the medical and non-medical evidence when determining Patty L.'s symptom's persistence, intensity, and limiting effect; the ALJ considered Patty L.'s subjective statements at the hearing and to her treatment providers. The ALJ also considered the objective medical evidence pertaining to each of her impairments, including consistently normal mental and physical examinations over the years, her minimal treatment history, which included some medication adjustments, and positive responses to medication, as well as Patty L.'s daily activities. The ALJ articulated her subjective symptom analysis, which was based on all the evidence.

In her reply brief, Patty L. primarily repeats the arguments she raised in her opening brief. She contends her burden of proof is merely to produce evidence in support of her claim, and argues that she met that burden. She contends the burden to properly consider all the evidence and explain the RFC and subjective symptom analysis rested solely on the ALJ, and she failed to do so. Patty L. also argues that the ALJ did not fully develop the facts, and failed to build an accurate and logical bridge between the evidence and her conclusions. Patty L. explains that she is not asking the Court to reweigh the evidence, but rather, she wants the ALJ to make the required sufficient initial review of the evidence. Given the totality of the evidence, she argues the ALJ's analysis was deficient and unsupported. Furthermore, the Commissioner's suggestion that only objective evidence can support RFC restrictions is wrong, and Patty L. argues that she presented both objective and subjective evidence to support her position.

Patty L. repeats her assertions that the ALJ impermissibly played doctor and based the entire written decision on her own lay interpretation of raw medical evidence, that the ALJ failed to explain how the evidence supported the RFC restrictions of maintaining concentration,

attention, persistence, and pace for two-hour intervals and completing tasks that do not require fast pace or strict production quotas. Patty L. again repeats that the ALJ failed to address time off task, absences, and stress tolerance; and the ALJ erred in finding her less limited than alleged based on a wholly unsupported analysis of the evidence.

The notes the recent Seventh Circuit ruling,

> We will affirm ALJ decisions to deny disability benefits when the ALJ follows applicable law and supports its conclusions with substantial evidence. See 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152, 203 L. Ed. 2d 504 (2019). "Substantial evidence is not a high threshold." *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021). It means nothing more than "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (internal citations omitted).

*Grotts v. Kijakazi*, 27 F.4th 1273, 1276 (7th Cir. 2022).

A careful review of the ALJ's written decision and the parties' arguments leads the Court to conclude that each of the positions advanced by the Commissioner is well taken and supports affirming the ALJ's decision. The ALJ supported her conclusions with substantial evidence and provided a sufficient accurate and logical bridge to allow the Court to trace the reasoning and analysis of the ALJ. It does not appear that the ALJ committed an error of law or based her decision on serious factual mistakes or omissions.

The Seventh Circuit has directed that "[s]ummaries of medical evidence, while definitionally 'partial and selective,' are appropriate." *Id.* at 1278.

> Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence. The regulations instruct ALJs to consider a number of factors, including: (1) relevant medical evidence, including intensity and limiting effects of symptoms; (2) treatment and efficacy; (3) return to gainful activity; (4) work during disability period; (5) daily activities; and (6) statements inconsistent with the record. An ALJ need not discuss every detail in the record as it relates to every factor.

*Id.* (internal citations omitted).

17

Concerning the medical record, there was sufficient evidence in the record to provide a basis for the ALJ to review Patty L.'s conditions and determine her limitations and restrictions. True, the state agency medical and psychological consultants concluded at their review stage that there was insufficient evidence to evaluate and assess any impairments or limitations. This was due in part to Patty L. and her counsel not submitting documents after being asked multiple times to do so. Additional medical evidence was added to the record after the state agency consultants' review, and (consistent with the earlier records) those records provided normal findings and improvement in Patty L.'s conditions. The ALJ's discussed the scant findings that were not normal. The medical evidence before the ALJ was not "raw," as Patty L. contends, and the ALJ did not play doctor in interpreting raw imaging or other raw medical data. Instead, the ALJ reviewed and considered the medical evidence and discussed the findings of the medical providers who interpreted the imaging and testing. The medical providers (predominantly Patty L.'s primary care provider) gave a substantial medical record for the ALJ to review and upon which to base her RFC findings. The ALJ sufficiently based her RFC determination on substantial evidence, and she did not commit errors of law as to the medical record.

While the ALJ's discussion of Patty L.'s obesity, edema, back pain, and left knee pain was not lengthy, the discussion was sufficient to allow the Court to conclude the ALJ did adequately consider these conditions when determining RFC and disability. The objective and subjective evidence of these conditions were very minimal, and as the ALJ explained, the evidence supports the conclusion that these conditions did not impact Patty L.'s functioning.

Furthermore, the ALJ provided an adequate discussion throughout the written decision of how Patty L.'s impairments and limitations were accounted for as to maintaining concentration, attention, persistence, and pace as well as being off task, absences, and stress tolerance. There

simply was no evidence in the record to support some of Patty L.'s current arguments before the Court for further limitations, and the ALJ explained why her RFC restrictions accounted for headaches, stress, and the single complaint of having some difficulty with concentration.

The Court agrees with the Commissioner's assertion regarding temperament factors involving a few routine and uninvolved tasks according to set procedures, sequence, or pace and that the disjunctive "or" signifies that a job may or may not have pace requirements. It may simply involve routine, repetitive, and uninvolved tasks; this appears to be the case with the jobs identified by the VE: bagger and dining room attendant. Additionally, neither job seems to involve assembly line production quotas or a fast pace that would be excluded by the RFC assessment. In the written decision, the ALJ discussed relevant evidence that a reasonable mind could accept as adequate to support the RFC conclusions.

Finally, the ALJ's subjective symptoms assessment was sufficient to affirm the decision. In her decision, the ALJ discussed the relevant medical evidence, including intensity and limiting effects of symptoms. She further discussed the limited, conservative treatment Patty L. received and the efficacy of that treatment. The ALJ considered and discussed Patty L.'s daily activities and her lack of gainful activity as well as statements deemed to be inconsistent with the record. The ALJ noted the weight she gave to the various evidence and provided an adequate reason for her decisions about Patty L.'s subjective symptoms, basing those decisions on evidence in the record. The Court finds nothing patently wrong with the ALJ's decision in this regard. The Court concludes that Patty L. has not presented arguments that warrant remand in this case.

## V. CONCLUSION

For the reasons set forth above, the final decision of the Commissioner is **AFFIRMED**. Patty L.'s appeal is **DISMISSED**.

**SO ORDERED.**

Date: 8/30/2023

_Hon. Tanya Walton Pratt, Chief Judge_
United States District Court
Southern District of Indiana

DISTRIBUTION:

Adriana Maria de la Torre
THE DE LA TORRE LAW OFFICE LLC
adriana@dltlawoffice.com

Brian J. Alesia
Social Security Administration
brian.alesia@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE
julian.wierenga@usdoj.gov